**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER J. RICE, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:26-CV-00010-O** |
| | § | |
| **THE CITY OF GRAHAM, TEXAS, ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION & ORDER**

Before the Court are Defendants' Motion to Dismiss and Appendix in Support (ECF Nos. 14–15); Plaintiffs' Response (ECF No. 18); and Defendants' Reply (ECF No. 21). After considering the Parties' briefing and the relevant caselaw, the Court determines that the Motion to Dismiss should be **GRANTED**.

## I. BACKGROUND[1]

This case arises from the unfortunate death of John Gabriel Rice ("John"). John's parents, Christopher J. Rice and Barbara L. Rice ("Plaintiffs"), bring this suit on their behalf and as representatives of The Estate of John Gabriel Rice.

John was diagnosed as a child with schizencephaly and later with dysregulated mood disorder (2022), paranoid schizophrenia (2023), and bipolar disorder (2023). On February 5, 2024, 18-year-old John went into his parents' front yard wielding a knife in his underwear. Christopher Rice ("Christopher"), John's father, requested that John come back into the house, which John refused. John then ran into the street where he was met by the City of Graham Texas Police

[1] Unless otherwise noted, the Court's recitation of the facts is taken from Plaintiffs' Complaint. *See* Pls.' Compl., ECF No. 1. At this stage, these facts are taken as true and viewed in the light most favorable to Plaintiffs. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

Department (the "Police Department"). Plaintiffs' Complaint states that Christopher heard officers from the Police Department yelling for John to "drop the knife" and then heard several gunshots ring-out. When Christopher made it to the scene, he found John lying in the street. According to Plaintiffs, Christopher encountered Graham Police Officer David Lipsey ("Officer Lipsey") in the street, and two other officers had already left the scene. Plaintiffs allege that one of the officers who left the scene is the officer who shot John.

John's autopsy revealed that he sustained a total of 6 gunshot wounds, which proved to be fatal. The report also indicated that John received blunt force trauma and other injuries consistent with being handcuffed.[2] The Parties dispute when John was handcuffed. Plaintiffs allege that John was handcuffed and then shot several times while lying on the ground. Defendants dispute this narrative and contend that the autopsy suggests that John "was handcuffed at some point, but it says absolutely nothing to suggest that he was handcuffed before the shooting."[3]

Plaintiffs filed suit on February 5, 2026, bringing claims against the City of Graham, Texas, (the "City"); the Police Department; Officer Lipsey; and Graham Police Officers Josh Hufstedler and Christopher Post (collectively "Defendants") alleging (1) violations of John's Fourth and Eighth Amendment rights via 42 U.S.C. § 1983; (2) the Texas Tort Claims Act under Chapter 101 of the Texas Civil Practice and Remedies Code; and (3) negligence claims. On April 20, 2026, Defendants filed their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs then timely filed their Response, and Defendants likewise filed their Reply. Defendants' Motion is ripe for the Court's review.

---

[2] App. Supp. of Defs.' Mot. Dismiss (John's Autopsy) App. 5, ECF No. 15.
[3] Defs.' Mot. Dismiss 2, ECF No. 14.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) is a defense raised claiming a "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). The Fifth Circuit has established that "the issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States,* 461 F.3d 632, 635 (5th Cir. 2006).

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Under the Constitution's Article III cases and controversies requirement, a plaintiff must establish standing to sue. Standing requires: (1) an injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained of" and (3) a likelihood that the injury will be redressed by a favorable decision. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); U.S. CONST. art. III, § 2. The injury must be concrete and particularized, not merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). A "'threatened injury must be certainly impending to constitute [an] injury in fact,' and . . . '[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because "standing is not dispensed in gross," "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (citing *TransUnion*,

994 U.S. at 431). At the summary judgment stage, a plaintiff cannot rest on "mere allegations, but must set forth by affidavit or other evidence specific facts" to demonstrate standing. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted).

**B. Rule 12(b)(6)**

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12 motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.

**III. ANALYSIS**

Without clear delineation on which claims apply to which Defendants, Plaintiffs bring claims alleging (1) violations of John's Fourth and Eighth Amendment rights via 42 U.S.C. § 1983; (2) the Texas Tort Claims Act under Chapter 101 of the Texas Civil Practice and Remedies Code; and (3) negligence claims. Defendants argue that Plaintiffs' claims should be dismissed because

(1) Plaintiffs lack standing under Federal Rule of Civil Procedure 12(b)(1) and (2) Plaintiffs fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).[4] The Court addresses each in turn.

**A. Plaintiffs' Standing**

Plaintiffs assert claims "individually and . . . as father and mother and as personal representatives" of John's estate.[5] Defendants argue that Plaintiffs do not have standing to sue in either capacity.[6] Plaintiffs contend that they have "standing pursuant to the Texas wrongful death and survival statutes."[7]

Relevant to the Court's analysis are two distinct types of standing: Article III standing and prudential standing. Article III standing "enforces the Constitution's case-or-controversy requirement," while prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). Article III standing is a jurisdiction inquiry that determines subject matter jurisdiction. *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022). Prudential standing is not a jurisdictional question, rather it is a merits question that asks "who, according to the governing substantive law, is entitled to enforce the right?" *Id.*

Article III standing requires establishing three elements: (1) injury in fact, (2) traceability, and (3) redressability. *Id.* at 302. Here, Plaintiffs seek money damages as redress for the death of their son, which was allegedly caused by Defendants. Such allegations are sufficient to satisfy Article III standing. *See Id.* at 304 (explaining that "[o]ur sister circuits have held that a child has Article III standing to file suit over the wrongful death of a parent. We presume that similar logic

[4] Defs.' Mot. Dismiss 14, 16, ECF No. 14.
[5] Pls.' Resp. 10, ECF No. 18.
[6] Defs.' Mot. Dismiss 14, ECF No. 14.
[7] Pls.' Resp. 11, ECF No. 18.

would govern a suit filed by a parent over the wrongful death of a child.") (internal citation omitted).

Prudential standing, on the other hand, requires satisfying other conditions beyond those imposed by Article III. *Id.* Relevant here is § 1983 standing which is guided by 42 U.S.C. § 1988 and "provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. § 1988). Thus, for Plaintiffs to have standing to bring claims under § 1983, they must have standing under Texas' wrongful death or survival statutes. *Id*. Under Texas law, a personal injury claim, "survives to and in favor of the heirs, legal representatives, and estate of the injured person . . . . against the liable person and the person's legal representatives." TEX. CIV. PRAC. & REM. CODE § 71.021(b). Such an action may be brought by the "surviving spouse, children, and parents of the deceased." *Id.* at § 71.004(b). However, "[i]f none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals." *Id.* at § 71.004(c).

Here, Plaintiffs (Johns' parents), filed suit on February 5, 2026—well longer than three months after John's death on February 5, 2024. Because this suit was filed outside of the 3-month window as required under § 71.004, the claim must be brought by the executor or administrator of John's estate. Plaintiffs allege they are "personal representatives" of John's estate, which according to the Texas Estates Code includes "an executor and independent executor" or "an administrator, independent administrator, and temporary administrator." TEX. ESTATES CODE § 22.031. Thus, because Plaintiffs allege they are the executors or administrators of John's estate, they have prudential standing to bring their claims.

**B. Plaintiffs' Failure to State a Claim**

Defendants argue that Plaintiffs' claims should be dismissed under Rule 12(b)(6) because Plaintiffs fail to (1) state a cognizable claim against the Police Department, (2) to overcome the officers' entitlement to qualified immunity and state a viable claim against any individual officer, (3) fail to allege a viable Monell claim against the City, and (4) raise viable state law claims.[8] The Court addresses each in turn.

1. <u>Police Department</u>

For a plaintiff to sue a city department, the plaintiff must establish that the department "enjoy[s] a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991. "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *McGrew v. City of Wichita Falls*, No. 3:14-CV-679-B, 2015 WL 3528236, at *6 (N.D. Tex. June 4, 2015). Absent a plaintiff establishing that an entity is a jural entity, the "Fifth Circuit has held that Texas law does not allow county or municipal police departments to be sued directly." *Williams v. Gregg Cnty. Sheriff's Dep't*, No. 6:25CV042, 2025 WL 909203, at *2 (E.D. Tex. Mar. 3, 2025), report and recommendation adopted, No. 6:25-CV-42-JDK-JDL, 2025 WL 904393 (E.D. Tex. Mar. 25, 2025) (citing *Darby*, 939 F.2d at 313).

Defendants assert that Plaintiffs have not and cannot show that the City "has ever passed any statute, ordinance, or resolution, or otherwise ever taken any official action that confers status on the Police Department as a separate jural entity with the power to sue or be sued."[9] Plaintiffs do not appear to refute this. Accordingly, the Court **DISMISSES with prejudice** all of Plaintiffs' claims against the City of Graham Police Department.

---

[8] Defs.' Mot. Dismiss 7–19, ECF No. 14.
[9] *Id.* at 13.

2. <u>Section 1983</u>

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). Both municipalities and individuals can be held accountable for violating a person's constitutional rights under Section 1983. *See Est. of Bonilla ex rel. Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

*a. Individual Officers—Qualified Immunity*

Defendants argue that Officers Lipsey, Hufstedler, and Post (collectively the "Officers") were acting in the scope of their official duties and are therefore entitled to qualified immunity.[10] Plaintiffs contend that the Officers used excessive force in violation of John's constitutional rights.[11]

Qualified immunity "shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022). A government actor is entitled to qualified immunity unless: (1) the plaintiff alleges a violation of a constitutional right and (2) that right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once qualified immunity is properly raised as a defense, the plaintiff bears the burden negate it. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

To start, Plaintiffs do not allege that any of the Officers did anything wrong or improper in violation of a constitutional right. Rather all of Plaintiffs' claims refer to Defendants as a collective.

---

[10] *Id.* at 14.
[11] Pls.' Resp. 13, ECF No. 18.

And beyond mentioning that Officers Post and Hufstedler were at the scene of the shooting, Plaintiffs do not allege that either of these officers took any action towards John. Such an absence of specific allegations violates "the principle that a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). This is because the notice pleading requirement of the Federal Rules of Civil Procedure entitles each defendant to know what he did that is asserted to be wrongful. *Martinez v. City of N. Richland Hills*, 846 Fed. Appx. 238, 243 (5th Cir. 2021). "[A]llegations based on a theory of collective responsibility cannot withstand a motion to dismiss." *Id.* Plaintiffs do plead that two officers left the scene and that "[o]ne of the Graham Police Department Officers who had left the scene upon Christopher Rice's arrival was the Officer who shot John Rice multiple times in the back," but Plaintiffs do not identify this officer or allege that one of the Officers named in this lawsuit is the shooter.[12] Based on the facts pled Court cannot draw a reasonable inference that any of the Officers named in this lawsuit are liable for any misconduct. *Iqbal*, 556 U.S. at 678. This alone is enough to support dismissal of the Officers.

But even if Plaintiffs had named specific officers, they still fail to allege a cognizable excessive force claim against any of the Officers. Excessive force claims generally fall into two categories: (1) force used to effect arrest under the Fourth Amendment, and (2) force used to subdue convicted prisoners under the Eighth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has explained that all claims that law enforcement officers have used excessive force "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. As such, because Plaintiffs have not alleged that John was a convicted prisoner harmed while in custody, Plaintiffs' Eighth Amendment claim is not viable.

---

[12] Pls.' Compl. 7, ECF No. 1.

To recover under a Fourth Amendment excessive force claim, a plaintiff must establish; "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Hill v. Carroll County, Miss.,* 587 F.3d 230, 234 (5th Cir. 2009) (Quoting *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999)). "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009) (Citing *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379 at 382).

Here, Plaintiffs satisfy the first prong of the test by alleging that John was shot multiple times. But Plaintiffs fail to meet the requirements of elements two and three. Taking Plaintiffs' facts as true, John was actively wielding a knife when police encountered him. Thus, the use of deadly force here cannot be said to be "clearly excessive" or "objectively unreasonable." *See Elizondo v. Green* 671 F.3d 506, 510 (5th Cir. 2012) (holding that deadly force was not unreasonable when a teenager would not put down a knife and there was a threat of physical harm). Plaintiffs do allege that "the autopsy report indicates that John Rice was handcuffed at the time of being shot multiple times,"[13] but as Defendants point out, while John's autopsy does indicate that he was handcuffed at some point, nothing in the autopsy report suggests that he was handcuffed before being shot.[14] *See Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents."). This too does not establish that the use of force was unnecessary.

---

[13] *Id.* at 3.

[14] *See* Defs.' Mot. Dismiss 2–3, ECF No. 14; *see also* Defs.' App. Supp. Mot. Dismiss (John's Autopsy), App. 5, ECF No. 15.

Defendants also argue that Plaintiffs have failed to sufficiently plead a deliberate indifference claim.[15] The Court agrees. Plaintiffs' Complaint repeatedly states that Defendants' policies and procedures were maintained and implemented with deliberate indifference and that "Defendants demonstrated a deliberate indifference to and conscious disregard for the constitutional rights and safety of John Rice."[16] But to demonstrate a constitutional violation, Plaintiffs must show that Defendants acted with deliberate indifference to a substantial risk of serious medical harm and resulting injuries. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). "Deliberate indifference requires that the official have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Id.* at 625–26 (internal citation omitted). Here beyond mere recitation that Defendants acted with deliberate indifference, Plaintiffs have not adequately pled that Defendants acted with deliberate indifference.

Thus, because Plaintiffs have not carried their burden to clearly establish a violation of constitutional rights, Defendants are entitled to qualified immunity. Accordingly, the Court **DISMISSES with prejudice** Plaintiffs' § 1983 claims against Officers David Lipsey, Josh Hufstedler, and Christopher Post.

*b. Monell Claim—The City of Graham*

It is well established that "every *Monell* claim requires an underlying constitutional violation." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (internal quotations omitted). Thus, because the Court has determined above that Plaintiffs have not adequately pled an underlying constitutional violation committed by the Officers, Plaintiffs § 1983 claims against the City cannot survive. *Wade v. City of Houston, Tex.*, 110 F.4th 797, 799 (5th Cir.

[15] Defs.' Mot. Dismiss 11–12, ECF No. 14

[16] Pls.' Compl. 12, ECF No. 1.

2024), cert. denied, 145 S. Ct. 1173 (2025). But even if it could survive, Plaintiffs have not pled a viable *Monell* claim.

To impose liability on a municipality under 42 U.S.C. § 1983, a plaintiff must evidence "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

i. Official Policy or Custom

Plaintiffs claim that three customs or policies violated John's constitutional rights; "utilizing or condoning the use of excessive force," "failing to properly train, supervise, discipline, transfer, monitor, counsel, and otherwise control patrolmen and/or officers," and "failing and refusing to correct, discipline, and follow up on the action of Defendant Officers." [17] Defendants contend Plaintiffs have not pointed to any written City policy to support their claims nor have they pointed to any pattern of acts to support a custom.[18] The Court agrees with Defendants.

An official municipal policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir.2001). To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). "[P]leadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged

[17] *Id.* at 13.
[18] Defs.' Mot. Dismiss 14, ECF No. 14.

policy or practice was the moving force behind municipal employees' [actions]." *Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017). But to plausibly plead a policy or custom exists "a plaintiff must do more than describe the incident that gave rise to his injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Merely because harm resulted from some interaction with a governmental entity does not permit the inference of an official policy for §1983 purposes. *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). To demonstrate a customary policy a plaintiff must plead facts showing "actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). Simply describing the incident that gave rise to the lawsuit does not plausibly plead a customary policy. *Pena*, 879 F.3d at 622.

Here, Plaintiffs have not pointed to actual text or written evidence of the policies that they allege violated John constitutional right under the Fourth Amendment. Nor do Plaintiffs plead facts showing a history of repeated conduct or violations by the Officers, the Police Department, or the City that could establish a customary policy. Therefore, the Court agrees with the Defendants, the Plaintiffs have failed to plead sufficient facts to establish a specific policy for a *Monell* claim.

Because Plaintiffs have not established that a policy or custom exists, the Court does not reach the remaining *Monell* requirements.

3. State Law Claims

Plaintiffs assert they are also bringing claims pursuant to the Texas Tort Claims Act ("TTCA"), TEX CIV. PRAC. & REM. CODE § 101.001 *et seq*.[19] Defendants argue these claims should be dismissed because they are improper under Texas law.[20] The Court agrees with Defendants.

[19] Pls.' Compl. 9, ECF No. 1.
[20] Defs.' Mot. Dismiss 19–20, ECF No. 14.

The TTCA provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106. As City of Graham employees, Officer David Lipsey, Officer Josh Hufstedler, and Officer Christopher Post, therefore, must "immediately be dismissed." *Id.*

Further, the TTCA's waiver of sovereign immunity for certain suits against governmental entities, "does not extend to claims arising out of intentional torts." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 765 (W.D. Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE § 101.057) (excluding waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"). Here, Plaintiffs have not attempted to plead any applicable waiver of immunity. And because Plaintiffs' underlying claims are for intentional torts, the TTCA does not waive the City's immunity. Thus, Plaintiffs' TTCA claims are not viable.

**C. Leave to Amend**

"[A] plaintiff is not entitled to "an opportunity to satisfy the heightened pleading requirements" of municipal liability cases when he simply "declares the adequacy of [his] complaint" in "response to the motion to dismiss." *Spiller*, 130 F.3d at 167 (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986); *see also Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). Here, Plaintiffs' response did no more than declare the sufficiency of their pleadings. Granting leave to amend "would do nothing but prolong the inevitable." *Spiller*, 130 F.3d at 167. Accordingly, the Court **DENIES** leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. The Court **DISMISSES with prejudice** all of Plaintiffs' claims.

**SO ORDERED** on this **6th day** of **August, 2026**.

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE